IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JERMAINE HALL, #16946-057, | ) | Civil Action No. 4:07-3097-SB-TER |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| M. PETTIFORD; NFN BOWINGS; | ) | |
| C. JONES; AND W. EDWARDS, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Jermaine Hall ("plaintiff/Hall"), filed this action under 42 U.S.C. § 1983[1] on September 14, 2007. At all times relevant to the allegations in the plaintiff's complaint, he was an inmate at the Federal Correctional Institution (FCI) Bennettsville, South Carolina. Plaintiff alleges that his constitutional rights were violated.  On March 27, 2008, defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum and exhibits in support of that motion. (Doc. #35).  Because the plaintiff is proceeding pro se, he was advised on or about March 28, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. Plaintiff filed a response on April 9, 2008.

On March 18, 2008, plaintiff  filed a document entitled "Judgment on the Pleadings or

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

Alternate Summary Judgment."  (Doc. #33).

## II.  SUMMARY JUDGMENT STANDARD

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material

fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56© because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### III. DISCUSSION

### A. FACTS PRESENTED

Plaintiff was sentenced on August 25, 1994, to a 211 month term of imprisonment by the United States District Court for the Middle District of North Carolina, for Possession with Intent to Distribute Cocaine Base. (Def. Exhibit 1). Plaintiff had a projected release date of October 22, 2008, via Good Conduct Time (GCT) Release. Plaintiff was incarcerated at the FCI Bennettsville, South Carolina. Based on the change of address notice filed by the plaintiff, it appears he has been released. (Doc. #61). The named defendants are: Michael Pettiford is the Warden at FCI Bennetsville; Denise Bowling-Lape is the Correctional Services Administrator, Southeast Regional Office; Christopher Jones, Correctional Officer, FCI Bennetsville; and William Edwards, Correctional Officer at FCI Bennettsville. (Id.). Thus, all the named defendants are federal employees/officials.

In his complaint, plaintiff alleges as follows, quoted verbatim, in full:

The Plaintiff was denied access to the Chapel, during the move was stopped by C.O. W. Edwards, and C. Jones. They allowed an inmate with Plaintiff to go to work (the barber shop) while forcing Plaintiff to return to his unit. Favoritism is not allowed per their rules and the law. The (Barber Shop) inmate was allowed to continue and both were at the sidewalk infront of the Dining hall doors.[2] This denied Plaintiff's freedom of religion, he has sence filed all administrative Remedies. The Defendants have stated that this was a controled move (which is a violations of their rules for safety.

---

[2] If plaintiff is attempting to allege a claim for discrimination, it fails. Mere conclusory allegations of discrimination are insufficient to state a claim

3

> The plaintiff is requesting this Honorable Court to award him damages of 5 million dollars and 5 million dollars for pain and suffering. The Plaintiff request that the Defendants directly involved be sanctioned for their actions denying him access to the Religious services. The Court can see that the defendants are righting rules as they go along and Plaintiff requests they be reminded of that factor. He thanks this Honorable court for their time and understanding.

(Complaint).

## B. SUBJECT MATTER JURISDICTION

Defendants argue that this court lacks jurisdiction over plaintiff's claims against the defendants in their official capacity. Defendants assert that as this action is construed under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), it is a suit against a federal agency or federal official which is actually a suit against the United States. Thus, defendants assert that by naming the employees, he is actually bringing suit against the United States and that the doctrine of sovereign immunity shields the United States from suit absent its consent to be sued. As the United States has not consented to be sued, defendants argue the courts lack jurisdiction over plaintiff's claims against the defendants in their official capacities and the claims should be dismissed.

Suits against federal officials may not be brought under § 1983. District of Columbia v. Carter, 409 U.S. 418, 424-25 (1973). Federal courts have power under 28 U.S.C. § 1331 (1994) to award damages occasioned by infringements by federal officials of constitutionally protected interests. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971); see Radin v. United States, 699 F.2d 681, 684 (4th Cir. 1983) (Bivens recognized an action against federal officers sued in individual capacities, but not against the United States). Plaintiff's Bivens action cannot lie against the United States nor against the individual defendants in their official

4

capacities. *See* United States v. Mitchell, 463 U.S. 206, 212 (1983) (the United States cannot be sued without its express consent .); Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983); Keene Corp. v. United States, 700 F.2d 836, 845 n. 13 (2d Cir.1983) (*Bivens* does not allow for recovery of money damages, or suits in general, against the government itself.). Thus, to the extent defendants are being sued under Bivens in their official capacities, the claims are barred by the doctrine of sovereign immunity. Sovereign immunity does not bar damage actions against federal officials in their individual capacities for violation of an individual's constitutional rights. Gilbert v. Da Grossa, 756 F.2d 1455, 1459 (citing Davis v. Passman, 442 U.S. 228(1979); Bivens, supra. Thus, to the extent defendants are being sued in their individual capacities under Bivens, plaintiff's claims are not barred by the doctrine of sovereign immunity.

Defendants submitted the declarations of William Edwards (def. Exhibit #3), Christopher Jones (def. Exhibit #4), Michael Pettiford (def. Exhibit #5), and Denise Bowling-Lape (def. Exhibit #6). Defendants also submitted copies of the plaintiff's Sentencing Monitoring and Computation Data, (def. Exhibit#1), copies of plaintiff's grievances and the responses (def. Exhibit#2), and a copy of the Controlled Movement Procedure (def. Exhibit #7).

On July 9, 2006, defendants Edwards and Jones were working in their assignments as the Compound #1 and Compound #2 Officers. (See Def. Exhibits #3 and #4). Defendant Jones and Edwards observed plaintiff depart his housing unit after all out-bound traffic was to cease, and did not arrive at the institution's Chapel prior to the closure of the controlled move. (Def. Exhibits, #2, #3, #4, #5, and #6). Plaintiff was found by defendants Edwards and Jones attempting to gain entry into the Chapel after the Chaplain had secured the door. Id. Plaintiff was directed by defendants Edwards and Jones to return to his assigned housing unit and advised him that he could return to the

5

Chapel during the next open controlled move. Id.

FCI Bennettsville has a system of controlled movement in which all inmate movement within the institution is controlled by utilizing an hourly scheduled movement system. (Def. Exhibit #7, A & O Handbook). Movements begin approximately on the hour and end ten minutes after the hour. Id. Inmates are only allowed the first five minutes of each movement to depart their location, and are permitted to move within the authorized areas of the institution. Id. The movements are announced through a public address system. If an inmate does not reach their destination within the allotted time frame, the inmate may receive an incident report. Id. The maintenance of safety, security, discipline, and internal order within a prison is dependent upon the controlled movement of inmates. (Def. Exhibits # 5 & #6). The responsibility for complying with the controlled movement lies with the individual inmate, not the prison official. (Def. Exhibits #33, #4, #5, #6).

As to the other inmate that plaintiff complains was permitted to report to the Barbershop when the other inmate was denied access to the Chapel like plaintiff, inmates who are assigned to a compound detail and are permitted to be present on the compound, even after the controlled move has been closed with the Compound Officer's permission. (Def. Exhibits #2, #3, #4, #5, #6).

### C. FIRST AMENDMENT

The plaintiff brings this case as a First Amendment Claim. (See complaint). Defendants argue this claim should be dismissed as there has been no First Amendment violation.

Even though incarcerated, prisoners retain fundamental constitutional rights. The cases which have considered the practice of religion inside prison have generally held that an inmate is entitled to practice his religion as he sees fit, as long as the religion does not interfere with "legitimate

penological interests."  O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987).    Protection of the "reasonable" practice of a religion, however, does not give an inmate unfettered discretion to make decisions about every aspect of how he will pursue his religious freedom.  As noted in O'Lone v. Shabazz, supra, religious practices cannot be allowed to interfere with legitimate penological interests.  When the two interests conflict, the security interests of the prison will prevail.  The court has stated that while the prison administration must make some effort to accommodate an inmate's religious practices, it is not required to "impose the least restrictive" means to balance his rights with their security interests.  To overcome the inmate's showing of harm, the administration must show only that allowing the exercise of the religious practice would interfere with prison administration.[3]  Dettmer v. Landon, 799 F.2d 929 (4th Cir. 1986).

      The Dettmer holding was consistent with the later decision by the United States Supreme Court in O'Lone, supra.  In that case, the Court considered whether Islamic inmates on a work detail should be allowed to return to the prison for mid-day services or whether, as an alternative, they could be given "inside" work assignments to enable them to conduct their worship service at the proper time.  The Court found that the prison administration did not need to accommodate those inmates' religious preferences because such an accommodation would result in increased pressures on guards (checking prisoners back into and out of the prison in mid-day), preferential treatment for the Islamic inmates (receiving inside work assignments) or both (by allowing them to perform their

---

[3] In Dettmer, supra, the inmate was willing to have the administrators hold the objects in question in their "contraband" area and to check them in and out as needed.  The Court determined, however, that while this would be the least restrictive means of accommodating all interests, the administration was not required to follow this route, as the contraband area was not generally used to check items in and out for inmates, but was limited to confiscated property which was usually disposed of by the prison officials.

work on weekends).   The O'Lone Court noted that as long as the administrators were providing some alternatives for the exercise of the religion, they were not required to allow every inmate to worship in any way or at every opportunity.  Without question, the Court determined that the security interests of the prison took precedence over slight infringements of an inmate's right to practice his religion.  The Court adopted the four-factor analysis set forth in Turner v. Safley, 482 U.S. 78, 89-90 (1987). The Turner analysis considers the following factors: (1) whether there is a logical connection between the restriction and the governmental interests invoked to justify it; (2) the availability of alternative means to exercise the restricted rights; (3) the impact that accommodation of the right might have on other inmates, on prison personnel, and on allocation of prison resources generally; and (4) whether there are "obvious, easy alternatives" to the policy that could be adopted at *de minimis* cost. Id. at 89-90.

In the case of Sweet v. South Carolina Department of Corrections, 529 F.2d 854 (4th Cir. 1975), the court quoted Justice Blackmun, then a Circuit Judge, writing in the case of Sharpe v. Seigler, 408 F.2d 966, 970 (8th Cir.).  Justice Blackmun said, "While freedom to believe is absolute, the exercise of religion is not."  As discussed above, when the exercise of religion collides with the interest of the state and society in having an orderly prison system, prison administrators need only show that the restriction involved serves a legitimate penological interest.

This court agrees with the defendants that plaintiff cannot prevail on his claim under the First Amendment based on the Turner analysis. Under the first Turner factor, the restriction of the plaintiff's right to associate is logically connected to the government's interests in maintaining order and security in its prisons and protecting society.  Plaintiff arrived at the Chapel after the control movement had ended and the Chaplain had already shut and secured the door to the Chapel. (Def.

8

Exhibits). Plaintiff has not offered any evidence to contradict this finding. Further, plaintiff has been provided a means of worship and has not been deprived of all forms of religious exercise. Plaintiff only alleges that he was turned away from the Chapel on one occasion. Plaintiff was told that he had to return to his housing unit but could return to the Chapel during the next open controlled move. (Def.'s declarations). Plaintiff has not shown any evidence that he was not allowed to return to the Chapel during the next controlled movement. Plaintiff has failed to show that his religion was substantially burdened by missing this one Chapel service when he was not allowed for a valid security reason. Therefore, it is recommended that summary judgment be granted for defendants on the First Amendment claim.

### D. RFRA/RLUIPA

Given the nature of plaintiff's claim, defendants argue that if it could be considered under the Religious Freedom Restoration Act of 1993 ("RFRA"), the claim would fail.

In 1993, Congress passed the RFRA, 42 U.S.C. § 2000bb *et seq.*, which seemingly created a new standard of review for free exercise of religion claims. Brown-El v. Harris, 26 F.3d 68, 69 (8th Cir. 1994); Woods v. Evatt, 876 F.Supp. 756, 761 (D.S.C.1995) *aff'd* 68 F.3d 463 (4th Cir. 1995). The RFRA prohibits "[g]overnment from substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." City of Boerne v. Flores, 521 U.S. 507, 515-16 (1997). Thus, the RFRA has three components, and a person seeking to state a claim under this section must first show that the government has substantially burdened a person's exercise of

9

religion. Woods, 876 F.Supp. at 762. Once the plaintiff makes this showing, the government then has the duty to show that the burden was placed on that person's exercise of religion "in furtherance of a compelling governmental interest" and that there was no less restrictive means to further that governmental interest. Id. In 1997, the Supreme Court invalidated RFRA as it applied to states and localities. City of Boerne, 521 U.S. 507, 536.

In 2000, Congress enacted the RLUIPA, 42 U.S.C. § 2000cc-1(a)(1)-(2), which provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." In passing RLUIPA, Congress "resurrected RFRA's language, but narrowed the scope of the act, limiting it to laws and regulations concerning institutionalized persons or land use." Murphy v. Missouri Dept. Of Corrections, 372 F.3d 979, 987 (8th Cir. 2004). The proper standard of review under RLUIPA is: (1) have the defendants imposed a substantial burden on the plaintiff's exercise of religion; (2) does the substantial burden further a compelling governmental interest; and (3) has it been done by the least restrictive means. *See* Lovelace v. Lee, 472 F.3d 176, 182 (4th Cir. 2006).

Neither RFRA or RLUIPA define "substantial burden," but the Supreme Court has defined the term in the related context of the Free Exercise clause. According to the Court, a "substantial burden" has been defined as: "where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, Indiana Employment Security Division, 450 U.S. 707, 717-18 (1981). However, the burden placed on the religious exercise "must

be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief which is central to religious doctrine." Graham v. C.I.R., 822 F.2d 844, 851 (9th Cir.1987), *aff'd. sub nom.*, Hernandez v. Commissioner, 490 U.S. 680 (1989). In Lovelace v. Lee, 472 F.3d 174 (4th Cir. 2006), the Fourth Circuit Court of Appeals stated:

> We likewise follow the Supreme Court's guidance in the Free Exercise Clause context and conclude that, for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 187 (quoting *Thomas*, 450 U.S. at 718).

The plaintiff cannot prevail on a claim that may be considered under the RFRA/RLUIPA because the defendants have not imposed a substantial burden upon the plaintiff's exercise of religion. The plaintiff asserts that he was instructed to go back to his housing when he arrived at Chapel after the controlled movement had ended. Defendants have asserted that plaintiff was instructed that he could return to Chapel at the next controlled movement. The reason plaintiff was not allowed in the Chapel is because plaintiff had not moved within the time frame of the controlled movement. The door to the Chapel has already been closed and secured. The FCI Bennetsville has a procedure for controlled movement as security measures. Plaintiff has failed to show that the government has substantially burdened his exercise of religion by causing him to miss one religious service for his failure to comply with the controlled movement procedure. Woods, 876 F. Supp. at 762. If there is no substantial burden, there can be no violation. Therefore, defendants' motion for summary judgment should be granted on this issue.

### E.  QUALIFIED IMMUNITY

Defendants argue that they are all entitled to qualified immunity. Defendants assert plaintiff cannot establish that any defendant violated a constitutional right.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary

12

> functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. As stated above, defendants have not violated plaintiff's clearly established rights. Also, assuming, *arguendo*, a right has been violated, the undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## IV. PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff filed a document entitled "Judgment on the Pleadings or Alternate Summary Judgment." (Doc. #33). Plaintiff argues that the defendants did not respond to the summons in a timely manner and, thus, judgment should be granted in his favor.

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings after the pleadings are closed. Such a motion should be granted when, accepting the facts as pleaded in the complaint, the case can be decided as a matter of law. Tollison v. B & J

Machinery Co., Inc., 812 F.Supp. 618, 619 (D.S.C.1993). See also S & S Const., Inc. of Anderson v. Reliance Ins. Co., 42 F.Supp.2d 622, 623 (D.S.C.1998).

If the district court agrees with the recommendation above, plaintiff's motion is moot. Alternatively, it is recommended that this motion be denied. A Rule 12(c) motion is premature if made before an answer is filed. See Doe v. United States, 419 F.3d 1058 (9th Cir. 2005)(premature and should have been denied). It is also recommended that any motion for summary judgment plaintiff attempted to make within this motion be denied in that the motion does not conform to the requirements under Rule 56 of the Federal Rules of Civil Procedure.

## V.  CONCLUSION

Based on the reasons stated above, it is RECOMMENDED that defendants' motion for summary judgment (Doc. # 35) be GRANTED and this action dismissed.

It is FURTHER RECOMMENDED that plaintiff's motion for "Judgment on the Pleadings or Alternate Summary Judgment" (Doc.#33) and any other outstanding motions be deemed MOOT, or, alternatively, be DENIED.

> Respectfully submitted,
>
> s/Thomas E. Rogers, III
> Thomas E. Rogers III
> United States Magistrate Judge

January 28 , 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

14